## DAVID R. SMITH

### v.

## T. A. HOOD ET AL.

1. SALE—PARTNERSHIP LIABILITY.—Appellee H. bought cattle of appellant, but they were not delivered until after the formation of a partnership between appellees H. and D. There was some conflict in [evidence as to whether the cattle were sold to the firm, or to H. alone, but it appeared that they were taken by the firm, killed, sold, and the money went into the firm account for its benefit, *Held*, that the cattle remaining with appellant until taken by the firm, unless the jury should believe that it was the intention of the parties that the title should pass to H. at the time the contract was made, the title remained with appellant until they were received by the firm; and the firm receiving them would be liable therefor.

2. JOINT LIABILITY.—If the title had passed to H., and the cattle still remained with appellant unpaid for, it was competent for H. and appellant to annul such purchase, and for H. to receive the cattle on the partnership account, he being a member of the firm, and having authority to make such purchase, and if H. and D. received the cattle from appellant, and the firm did not receive them from H., then they would be liable, no matter what contract existed between H. and appellant.

3. EVIDENCE.—PARTNERSHIP BOOKS.—It was error to refuse the admission in evidence of the partnership books, so that the jury might see whether H. ever received credit for the cattle by the firm, and also to show the state of the account of D. and H. with the firm.

4. JURISDICTION, APPELLATE COURT.—The Appellate Court has jurisdiction of appeals from the County Court.

APPEAL from the County Court of Warren county; the Hon. ELIAS WILLETTS, Judge, presiding. Opinion filed November 1, 1876.

Messrs. POWERS & MOSHER and Mr. JAMES B. CLARK, for appellant; as to liability of the firm, cited Watt v. Kirby, 15

Ill. 200; Wittram v. Van Wormer, 44 Ill. 525; Dishon v. Schorr, 19 Ill. 59; Gow on Partnership, 156.

The question of a completed sale, and whether the title passed to Hood at the time of the contract, should have been left to the jury: Rhea v. Riner, 21 Ill. 531; Shelton v. Franklin, 68 Ill. 333; Graff v. Fitch, 58 Ill. 373; Wade v. Moffett, 21 Ill. 110; Kidder v. McKnight, 13 Johns. 293.

Messrs. STEWART, PHELPS & GRIER, for appellees; that the firm are not liable for a purchase made by one member before the formation of the partnership, even though the firm received the benefits, cited Gow on Partnership, 151; Parsons on Partnership, 210; Story on Partnership, § 152; Watt v. Kirby, 15 Ill. 200; Wright v. Brosseau, 73 Ill. 381; Goodenow v. Jones, 75 Ill. 48.

LACEY, J.  This suit was originally commenced before a justice of the peace by appellant against appellees to recover the price of cattle claimed to have been sold.  The cause was finally appealed to the county court and there tried, the jury finding a verdict for appellees.  The cause is brought here by appeal, the court below overruling appellant's motion for a new trial, and rendering judgment against him for costs.

It was claimed that the cattle in question were sold to appellees as partners.  It appears that the appellee Hood had been in the meat business in Warren county, some time prior to the 13th June, A. D. 1877.

It appears that on the latter date appellee Duncan entered into full partnership with Hood, having purchased a one-half interest of Hood for what Hood owed him, paying about $500.  From that time the business was carried on by the two partners, until July 13, 1877, when Duncan sold out to Milligan.

Prior to the time appellees entered into partnership, on the 25th or 26th of May, appellee Hood contracted with Charles Smith for the 14 head of heifers in question at a certain fixed price per pound.

Hood testified that he purchased the cattle of appellant on

60 days' time, that he would take one-half in June and the rest in July. Smith testifies that a part of the cattle were to be delivered about the middle of June, and the rest the last of June or first of July, on two or three weeks' credit. The testimony of Hood and Smith differs in regard to what Hood said about the partnership of appellees.

Smith claims that Hood said he had a partner that was coming in on Monday; that he had not the money and would only ask two or three weeks credit. That the partner's name was Duncan. Hood, however, claims that he only told Smith that he was talking of taking in Duncan as a partner; did not say that he had a partner, and if he took him in he could pay for them sooner.

It appears from the evidence and the firm books, that the cattle were received by the firm of appellees, part on the 18th June, and the rest on the 2nd July, 1877, and credited to Smith, appellant, on the firm books, amounting in all to $401.-18. The clerk entered the credit. The cattle were killed and sold, and the money went to the benefit of the firm.

As a defense it is set up that the cattle were Hood's, he having purchased them of appellant, and that he put them into the firm as his own, and hence appellant could not recover.

The appellees rely on the Statute of Frauds as a defense, and in the second instruction the jury were told as follows :

2. "The court instructs the jury, that if they believe from the evidence, that the cattle in controversy were sold to Hood before the partnership of Hood & Duncan was formed, and that at the time Hood purchased the same he had no authority to purchase the same on the credit of Duncan, then the fact that such cattle went into the business of Hood & Duncan and appear on their book, or the fact that Duncan received benefit therefrom, or even agreed with Hood to pay for them, or that they should be paid for out of the firm—if such were the proof, would not entitle the plaintiff, Smith, to sue the firm of Hood & Duncan, unless said Duncan, in writing, or for a valuable consideration, agreed with Smith, before this suit was brought, that he would stand liable for the price of said cattle as purchased by Hood."

It will be remembered that the cattle had never been delivered,—had never been weighed. They remained in the possession of Smith. Suppose the cattle had been purchased before the partnership was formed ; they had never been delivered, and unless the jury should have believed from the evidence that it was intended at the time the contract was made by Hood for the purchase of the cattle that the title should then and there pass, the title still remained in appellant. Were this the case, and the title still remained in appellant, and Hood & Duncan recived them from appellant, then they would be liable. The cattle would be the original consideration.

Again, if the title had passed to Hood, and the cattle still remained with appellant, unpaid for, it was competent for Hood and appellant to annul such purchase if they saw proper, and for Hood to receive the cattle on the partnership account, he being a member of the firm and having authority to purchase. If appellees, Hood & Duncan, received the cattle from Smith, and the firm did not receive them from Hood, then they would be liable to pay for them, no difference what contract had existed between Hood and appellant. Watt v. Kirby, 15 Ill. 200.

The instruction was calculated to mislead the jury, and should not have been given.

It was also error in the court to refuse to admit in evidence the books of the firm, to show the state of Duncan's account with the firm, and also to show Hood's account, that the jury might see what credits were given to Duncan and what to Hood. That the jury might see whether Hood ever received any credit for the cattle got of appellant, on the firm books, because it is insisted in defense that the firm received the cattle of Hood and not of appellant; that Hood had received them as his own from appellant and turned them into the firm on his own account. The books would tend to show whether this were or were not so, and should have been admitted.

The instructions for appellant, so far as they conform to this opinion, should have been given, but most of the refused instructions for appellant were long and involved and contained erroneous propositions of law, while at the same time they

contained many correct propositions. We do not deem it necessary to give them a critical examination for the reason that this case will be submitted to another jury, and counsel can easily correct them.

We are also of the opinion that the court erred in not allowing the witness, Honk, to testify in regard to conversation had with Duncan.

It has been objected that the Appellate Court has no jurisdiction of this appeal, and the opinion in the case of Webster v. Gillmore, filed at Ottawa, June 21, 1879, by the Supreme Court, is cited as holding that the Appellate Court has no jurisdiction in cases of appeal from the County Court.

We have examined that opinion and find that it was a contested election case, tried in the County Court, and the statute under which the proceedings were had, expressly gives appeal to the Supreme Court.

The Supreme Court in reciting the acts giving the Appellate Court jurisdiction, failed to mention Sec. 1, County Court, act, 1877, Sess. Laws, page 77; Underwood's statute, page 390.

That Act gives appeals from the County Courts to Appellate Courts in all common law cases and attachment, and forcible entry and detainer suits.

The Supreme Court evidently did not intend to hold that that statute was not still in force. It was not necessary to so hold in the case before them.

The judgment of the court below is reversed and the cause remanded.

Reversed and remanded.